IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE HALL,
    Plaintiff,

vs.                                  Case No. 11-CV-4013-JTM/DJW

ASSOCIATED INTERNATIONAL INSURANCE
COMPANY, and PROCTOR FINANCIAL, INC.,
    Defendants.

MEMORANDUM AND ORDER

Before the court is Proctor Financial, Inc.'s Motion to Dismiss (Dkt. No. 14) all of Plaintiff George Hall's claims with prejudice. Although Plaintiff's Complaint does not specifically enumerate his claims, Proctor and this court have liberally construed it to allege three causes of action: (1) a third-party beneficiary claim based on the forced-placed insurance policy (hereinafter the "Master Policy"); (2) a promissory estoppel claim based on the notices titled "Evidence of Insurance"; and (3) a fraudulent misrepresentation claim based on the same notices. Proctor moves to dismiss Plaintiff's third-party beneficiary claim under 12(b)(1) for lack of standing and, therefore, lack of subject matter jurisdiction. Proctor moves to dismiss Plaintiff's final two claims under 12(b)(6) for failure to state a claim upon which relief can be granted. As provided below, Proctor's 12(b)(1) motion is converted to a 12(b)(6) motion, and all claims are dismissed without prejudice. Because Plaintiff's fraud claims are otherwise dispensed with, Proctor's 9(b) particularity argument does not warrant discussion.

**I. Factual Background**

The court dismissed Plaintiff's previous action against Proctor. In that dismissal, the parties agreed to the following stipulations:

a. Plaintiff is the owner of a farmstead commonly described as 106 Vermont Terrace, Greeley, Kansas.
b. Team Bank held a mortgage against Plaintiff's real estate that was later taken over by Great Southern Bank.
c. The bank was notified that Plaintiff no longer insured his farmstead, which was required by the mortgage.
d. Plaintiff's real estate was damaged by a storm on or about June 15, 2009.
e. Plaintiff never communicated with Proctor Financial, Inc. whether verbally or in writing, at any time prior to June of 2009.
f. Great Southern Bank made a claim against the insurance policy as a result of the damage to Plaintiff's real estate and received a payment on that claim in July of 2009.
g. The policy did not cover such parts of the collateral (the farmstead) used for farming such as barns, out buildings, fences, timber, or crops.
h. Defendant Great Southern Bank first received notice that Plaintiff disputed the amount paid on the insurance claim when it was [sic] received written correspondence from Plaintiff's attorney Paul Hasty to that regard. Plaintiff's attorney notified Proctor Financial by letter dated October 23, 2009, that Plaintiff disputed the amount paid on the insurance claim.

Agreed Order of Dismissal, *Hall v. Great Southern Bank et al.*, Case No. 09-cv-02600-CM (Exhibit 3). The original Master Policy covered Plaintiff's property in the amount of $90,000. Plaintiff notified TeamBank (hereinafter the "Bank," collectively with its successor in interest, Great Southern Bank) that the appraised value of the collateral was $185,000. A new policy was issued covering Plaintiff's property in the amount of $190,000. On unknown dates Plaintiff received notices titled "Evidence of Insurance," which Plaintiff has attached as Exhibits A and B in his Complaint. Exhibit A provides:

> Your Lending Institution (hereinafter called "the Named Insured") has procured insurance under the above referenced Master Policy. This Master Policy has been issued by Associated International (hereinafter called carrier) in respect of coverage and limits as required by the Named Insured (hereinafter called "Required Perils")

as agreed and fully detailed within the terms and conditions of your Loan agreement.

This document is issued to notify you that the Named Insured has included your property under the above-mentioned Master Policy for Required Perils. The insurance provided is in accordance with the terms, limitations, conditions and exclusions contained in the Master Policy and any attachments thereto, held on file at the office of the Named Insured. The Original Master Policy may be inspected at the offices of the Named Insured, situated at the above address.

In the event of a claim or any circumstances giving rise to the possibility of a claim the Named Insured must IMMEDIATELY notify the person(s) named within the Master Policy.

THIS DOCUMENT IS ISSUED AS EVIDENCE OF INSURANCE ONLY
IT DOES NOT CONSTITUTE A LEGAL CONTRACT OF INSURANCE

Exhibit B is identical to Exhibit A, with minor exceptions in sections not quoted here. While the bank received payment on its claim against the defendants for damage to Plaintiff's property as a result of the 2009 storm, Plaintiff alleges that defendants have "refused to pay *all* of the damage to [P]laintiff's property" including "loss of timber, damage to fencing, and damage to outbuildings." Comp. ¶¶ 23, 25 (emphasis added).

**II. Legal Standard**

*A. 12(b)(1) Motion to Dismiss*

"A party attempting to invoke the jurisdiction of the federal courts is required to set forth a case or controversy as imposed by Article III of the Constitution." *Stewart v. Mitchell Transp., Inc.*, 197 F. Supp.2d 1310, 1313 (D. Kan. 2002). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If a plaintiff lacks standing, his claims are subject to dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1). *Stewart*, 197 F. Supp.2d at 1313. Proctor,

however, argues that "when a plaintiff cannot show that he is the third-party beneficiary of an insurance contract, dismissal for lack of standing under Rule 12(b)(1) is the proper remedy." Def.'s Mem. Supp. Mot. Dismiss 8-9 (citing *Stewart*, 197 F. Supp.2d at 1316-17). This is an oversimplification of *Stewart*.

In *Stewart*, the plaintiffs sought to enforce the implied good-faith provision of an insurance contract to which they were not parties. 197 F. Supp.2d at 1314. However, the *Stewart* court pointed out that while "the purpose of mandatory automobile insurance is to protect third parties," the plaintiffs in that case did not seek "to enforce the insurance contract's general terms and recover money for damages." *Id.* at 1315. The plaintiffs lacked standing because the provision created for their benefit was not the provision they sought to enforce. *Id.* Here, Plaintiff does, in fact, seek to enforce the same provision he alleges was intended to benefit him and is, therefore, not analogous to the *Stewart* plaintiffs. *See id.* The success of Plaintiff's third-party beneficiary claim as well as his standing to enforce the Master Policy are both based upon the same alleged provisions and intended benefit of that policy. Therefore, resolving the preliminary question of Plaintiff's standing to sue as a third-party beneficiary would require a premature determination of Plaintiff's substantive claims. *See Wyandotte Nation v. City of Kansas City, Kan.*, 200 F. Supp.2d 1279, 1299 (D. Kan. 2002).

When "the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56." *Id.* (quoting *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987)). "The jurisdictional question is 'intertwined with the merits of the case' if subject matter jurisdiction depends upon the same legal basis as do the substantive claims in the case." *Id.* (quoting *Clifton v. Mars Telecom, Inc.*, No. 95-2364-JWL, 1996 WL 157288 (D. Kan. Mar. 5, 1996)). As the *Stewart* court illustrated, when a plaintiff pursues a third-party beneficiary claim, his standing, as

well as his claim, are dependent upon a showing that a certain provision of the contract operated to his benefit. Therefore, the question of Plaintiff's standing is "intertwined with the merits of the case," and Proctor's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction must be converted to a 12(b)(6) motion to dismiss for failure to state a claim.

*B. 12(b)(6) Motion to Dismiss*

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511).

5

The court must assume that factual allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1940-41. However, a complaint that only states conclusions or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Also, "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (1997) (*citing Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972). The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and are undisputed. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court may also consider facts subject to judicial notice without converting the motion into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

**III. Analysis**

*A. Allegations Not Entitled to an Assumption of Truth*

Plaintiff alleges the Bank was obligated under the Mortgage to insure all of his property held as collateral by the Bank. This allegation is contradicted by the loan documents as well as the Agreed Stipulations, both of which state that Plaintiff was required to maintain insurance on the property. Plaintiff alleges the Bank was obligated to insure all of the collateral and that subsequent promises or false statements made by Proctor represented that the insurance procured satisfied the Bank's

6

obligation. The Agreement to Provide Insurance, however, states that if Plaintiff fails to provide insurance, the Bank *may* do so at Plaintiff's expense. It also explicitly states that "if lender so purchases any such insurance, the insurance will provide limited protection against physical damage to the collateral" and that Plaintiff's interest in the collateral "may not be insured." Therefore, Plaintiff's allegation that the Bank had an obligation to insure Plaintiff's collateral at all, much less in its entirety, is not entitled to an assumption of truth. *See GFF Corp.*, 130 F.3d at 1385.

### B. Plaintiff's Claims

#### 1. Third-Party Beneficiary

It is unclear whether Plaintiff intends to pursue a third-party beneficiary claim against Defendant Proctor. In his Response, Plaintiff stated that the insurance policy "is not the contract upon which claim is brought," but also claimed that "the facts of the case will show that plaintiff was, indeed, a third-party beneficiary of the insurance contract." Pl.'s Resp. to Mot. Dismiss ¶¶ 4-5. He goes on to say that his status as a third-party beneficiary "isn't really pertinent to the Motion to Dismiss because Proctor Financial, Inc. is an agent, not an insurance company." Pl.'s Resp. ¶ 4. Plaintiff also "does not claim that Proctor Financial Inc. is a party to the insurance contract." Pl.'s Resp. ¶ 4. However, to the extent Plaintiff brings a third-party beneficiary claim against Proctor, it is dismissed without prejudice.

The Kansas Supreme Court has clearly defined the third-party-beneficiary rule as it applies in Kansas.

> [T]he contract must be made for the third party's benefit as its object, and he must be the party intended to be benefitted in order to be entitled to sue upon it. The third party beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract. Contracting parties are

7

> presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract.

*State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 793-94, 107 P.3d 1219, 1231 (2005). Therefore, a plaintiff seeking to enforce a contract as a third-party beneficiary is required to "show the existence of some provision in the contract that operates to his benefit." *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 210, 597 P.2d 622, 632 (1979). There are two classes of third-party beneficiaries, intended and incidental, and "only intended beneficiaries have standing to sue for . . . breach of contract." *Byers v. Snyder*, 44 Kan. App.2d 380, 386-87, 237 P.3d 1258, 1265 (2010) (citing *Stovall*, 278 Kan. at 793, 107 P.3d at 1231). "In determining whether a particular person is an intended beneficiary of a contract, the court applies the general rules for construction of contracts." *Id.* These rules include that a contract "should not be interpreted by isolating one particular sentence or provision, but by construing and considering the entire instrument." *Id.* (citing *City of Arkansas City, Kan. v. Bruton*, 284 Kan. 815, 832-33, 166 P.3d 992, 1003 (2007)). However, "the primary rule [of contract interpretation] is to ascertain the parties' intent." *Id.*

Plaintiff does not point to any provision in the Master Policy which operates to his benefit.[1] In fact, he relies upon the Master Policy *not* operating to his benefit as the basis for his promissory estoppel and fraudulent misrepresentation claims. The Master Policy provides "The Underwriters will provide the insurance described in this policy to the Named Insured . . . " and "Named Insured means the Lending Institution named on the Declaration Page . . . " Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 9. Plaintiff was not listed as a Named Insured, but was provided for in several provisions

---

[1] The Master Policy forms the basis of Plaintiff's third-party beneficiary claim. While Plaintiff contests Proctor's use of the policy in support of the Motion to Dismiss, he does not dispute the authenticity of the policy submitted by Proctor. *See GFF Corp.* at 1385. Therefore, the insurance policy may be considered by the court without converting Defendant's Motion to Dismiss to a motion for summary judgment.

8

as a "Borrower," defined as one who is "obligated on a loan as defined and has . . . an interest in the property securing such loan." *Id.* These provisions do not bestow any benefit upon the "Borrower," but rather define the Named Insured's rights and duties in the event that, for example, the "Borrower" defaults on his mortgage. Therefore, the reasonable interpretation is to presume the parties did not intend Plaintiff, as the "Borrower," to receive any benefits assigned to the Named Insured. *See Levin v. Maw Oil & Gas*, 290 Kan. 928, 939, 234 P.3d 805, 814 (2010). However, Plaintiff's claim could survive if he is a "member of a designated class or identifiable in some manner as a benefited person." *See Hartford*, 226 Kan. at 210, 597 P.2d at 632.

The "Service of Suit" section of the Master Policy designates Associated's attorney as the appropriate person to be served in the event of a lawsuit filed by "the Insured or any beneficiary hereunder arising out of this contract of insurance." Def.'s Mem. Supp. Mot. Dismiss Ex. 1 at 6. Despite this language that may, in isolation, conceivably appear to represent an intent on behalf of the parties to create one or more third-party beneficiaries, other sections define those potential beneficiaries as the Bank's "affiliated, subsidiary and associated companies and/or corporations as now exists [sic] or may hereafter be constituted or acquired during the policy period" or, in the event of death, the Named Insured's "legal representative but only while acting within the scope of duties as [Named Insured's] legal representative." *Id.* at 4, 9. This same provision expressly states that the "rights and duties under this policy may not be transferred without [Associated's] written consent except in the case of death of an individual Named Insured." *Id.* at 4.

If Plaintiff is in fact pursuing a third-party beneficiary claim, the specific provisions he seeks to enforce are the "Loss Payable" clauses. These are perhaps the most devastating to Plaintiff's claim, as they declare that any loss shall be "payable to the Named Insured unless another payee is

9

specifically named." *Id.* at 11. No such payee was specifically named, and it would be unreasonable to assume the parties intended to provide implicitly for a person or class of persons as alternate payees when the contract language explicitly requires all payees to be named.

The Master Policy was entered to protect only the Bank's interest in Plaintiff's property, which is common practice with lender- or forced-placed insurance, despite the fact that Plaintiff certainly benefited from the Master Policy discharging his obligations under the mortgage. *See* Alvin C. Harrell, *Forced-Placed Insurance Hits the Spotlight*, 48 CONSUMER FIN. L. Q. REP. 513, 514 n.4 (1994) ("[E]ven when the lender is [the] sole beneficiary of such coverage, it protects the borrower by covering his or her loan obligation."). However, this indirect benefit classifies him as a mere incidental beneficiary of the Master Policy, which does not entitle him to sue upon it. *See Byers*, 44 Kan. App.2d at 386, 237 P.3d at 1265.

2. Justifiable Reliance - Promissory Estoppel and Fraudulent Misrepresentation

Plaintiff's final two claims are in many ways parallel. In fact, Kansas law recognizes that "promissory estoppel involves . . . misrepresentation." *Bittel v. Farm Credit Servs. of Cent. Kan., P.C.A.*, 265 Kan. 651, 662, 962 P.2d 491, 499 (1998) (quoting *First Bank of WaKeeney v. Moden*, 235 Kan. 260, 265, 681 P.2d 11, 15 (1984)). Promissory estoppel requires that a "promise was made under circumstances where the promisor intended and reasonably expected that the promise would be relied upon by the promisee and . . . the promisee acted reasonably in relying upon the promise." *Bittel*, 265 Kan. at 661, 962 P.2d at 498 (quoting *Decatur Cooperative Ass'n v. Urban*, 219 Kan. 171, Syl. ¶¶ 5, 6, 7, 547 P.2d 323, 324 (1976)). Additionally, it should only be invoked "if a refusal

to enforce [the promise] would be virtually to sanction the perpetration of fraud or would result in other injustice." *Id.* at 661, 962 P.2d at 498-99.

Similarly, an action for fraudulent misrepresentation must include an "untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment." *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191, 1195 (2004). Therefore, Proctor is correct that promissory estoppel and fraudulent misrepresentation both contain the essential element of justifiable reliance and, consequently, both of Plaintiff's remaining claims can be defeated by its absence. For these claims to withstand Proctor's motion, Plaintiff's allegations must support a reasonable inference that he did in fact rely to his detriment on Proctor's representations, be they promises or false statements, that the Master Policy protected Plaintiff's ownership interest in his property and that his reliance was reasonable.

Plaintiff's allegations of reliance are based solely on the notices of insurance sent by Proctor. Plaintiff claims these notices indicated that the policy "would provide protection for the plaintiff's property given to the bank as collateral," specifically "all of the collateral." Presumably, Plaintiff intended "plaintiff's property" and "collateral" to include his equity or ownership interest in the property, rather than simply the Bank's insurable interest. However, this is an unreasonable interpretation, because it is inconsistent with the language of the notices, as well as the commonly known purpose and practice of forced-placed insurance policies.

Plaintiff's interpretation of the policy's coverage is dependent on two factual allegations: (1) that the Bank was obligated to insure Plaintiff's interest as well as its own, and (2) that the notices represented the policy met that obligation. The first issue of whether the Bank had such an obligation

11

is irrelevant unless it is plausible that the notices would lead a reasonable person to believe that the insurance was procured in accordance with such an obligation. The only language in the notices relating to any such obligation is the statement that the Master Policy was issued "in respect of coverage and limits as required by the Named Insured . . . as agreed and fully detailed within the terms and conditions of your Loan agreement." Compl. Ex. A at 1. "Required by" is not synonymous but rather antonymous with "required of," and seriously undermines Plaintiff's contention that the notices represented that the Master Policy "met the obligations of [the Bank]." The remaining portion of the sentence is more persuasive. It is substantially more plausible that the phrase "as agreed and fully detailed within the terms and conditions of [the] Loan agreement" could reasonably be understood as indicating that the coverage and limits provided by the Master Policy would be essentially the same as those contained in the loan agreement, regardless of which party was obligated to procure such coverage. However, as previously indicated, the language of the loan documents directly contradict the notion that any insurance procured by the Bank would protect Plaintiff's interest or that the Bank had any such obligation.

Plaintiff's reliance is also unreasonable because the purpose of forced-placed insurance, which is "widespread in the lending industry," is to "protect the *lender* from certain risks" by increasing its "ability to recover the outstanding balance of the loan in the event of injury or loss to the collateral supporting the loan." John M. Flynt, *A Solution to Force-Placed Insurance Litigation for Lenders: Disclosure and Arbitration*, 26 CUMB. L. REV. 537, 539 (1995-1996) (emphasis added). A lender's risk is often significantly greater than a borrower's, because the lender typically has far more money invested in the collateral than the borrower, yet virtually no means of controlling or protecting that collateral and, thus, its investment. Harrell, *supra*, at 513. This risk justifies the long

recognized authority of lenders to not only place insurance on collateral and charge a borrower's account for the premiums, but also to procure insurance "solely to protect the interest of the lender" and "not cover the debtor's equity." *Id.* at 513-14. There is no such logic or need that would justify a borrower requiring a lender to maintain insurance on collateral, which further undermines the plausibility of Plaintiff's justifiable reliance. Therefore, Plaintiff's promissory estoppel and fraudulent misrepresentation claims are dismissed.

**IV. Conclusion**

While Plaintiff's potentially total loss in his property as well as any equitable interest in that property is unfortunate, the surrounding circumstances "do not ring of fraud or deceit." *See Bittel*, 265 Kan. at 663-64, 962 P.2d at 500. The Master Policy was not intended to insure Plaintiff, and the facts Plaintiff alleges in his Complaint are insufficient, or otherwise directly contradicted by properly considered documents, to support his claim that he justifiably relied on any representations by Proctor. Accordingly, his claims against Proctor are dismissed without prejudice.

IT IS ACCORDINGLY ORDERED this 1st day of August, 2011, that Defendant's Motion to Dismiss (Dkt. No. 14) is granted. All of Plaintiff's claims are dismissed without prejudice.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE